FILED
United States Court of Appeals
Tenth Circuit

June 25, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LINDA TOWNSEND-JOHNSON,

      Plaintiff-Appellee,

v.

SUE CLEVELAND, Superintendent,
in her official and individual capacity,

      Defendant-Appellant,

and

RIO RANCHO PUBLIC SCHOOLS,

      Defendant.

No. 11-2196

(D.C. No. 1:10-CV-257-JCH)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **BALDOCK** and **HOLMES**, Circuit Judges.

Plaintiff Linda Townsend-Johnson, an African-American female and former

public school principal, brought this civil rights action under 42 U.S.C. §§ 1981

& 1983, against Defendant Sue Cleveland, Superintendent of Rio Rancho Public

Schools. Among other things, Plaintiff's complaint alleged Defendant deprived her

of a contractual relationship and equal protection of the law on the basis of race.

---

[*] This order and judgment is not binding precedent except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however,
for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The district court denied Defendant qualified immunity at the pleading stage. Defendant appealed pursuant to 28 U.S.C. § 1291. We review the district court's decision de novo, accepting the complaint's well-pleaded facts as true. See Brown v. Montoya, 662 F.3d 1152, 1162 (10th Cir. 2011). To survive a motion to dismiss under a qualified immunity framework, Plaintiff's complaint must allege facts sufficient to show Defendant plausibly violated her federal rights, and those rights were clearly established at the time. See Robbins v. Oklahoma, 519 F.3d 1242, 1249 (10th Cir. 2008). Applying the appropriate standards, we affirm.[1]

## I.

The facts, as alleged in the complaint, are as follows. Rio Rancho Public Schools offered Plaintiff an employment contract to serve as Principal of Puesta Del Sol Elementary School for the 2006–07 school year. Plaintiff began working as

[1] Our jurisdiction generally extends to "final decisions" of the district courts. 28 U.S.C. § 1291. But a district court's "interlocutory" decision is also appealable if it falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). Accordingly, "[a]n appealable interlocutory decision must . . . conclusively determine the disputed question and that question must involve a claim of right separable from, and collateral to, rights asserted in the action." Mitchell v. Forsyth, 472 U.S. 511, 527 (1985) (internal quotation marks and citation omitted). Because a district court's qualified immunity decision meets this criteria, "Defendants are permitted to appeal from the denial of a motion to dismiss on qualified immunity grounds precisely to spare them the ordeal of discovery if the complaint fails to allege a constitutional violation or if the alleged violation was not clearly established." Robbins, 519 F.3d at 1249 (citing Behrens v. Pelletier, 516 U.S. 299, 306 (1996)).

2

principal on August 7, 2006. The Rio Rancho school district generally gives principals six months to prepare their program. On November 10, 2006, however, assistant superintendent Carl Leppelman placed Plaintiff on a developmental growth plan to improve Plaintiff's performance. During their meeting to discuss the plan, Leppelman made remarks regarding "Plaintiff's practice of wearing hats and other attire associated with the African-American communities." Leppelman made such remarks on several subsequent occasions as well. Plaintiff believed her one-on-one meeting with Leppelman "was unproductive, harassing, unjust, and led [her] to question the level of patronage she would be receiving from her superiors in the future." Two days later, Plaintiff met with Defendant Cleveland and informed her of Leppelman's behavior. Plaintiff provided Defendant with a letter, detailing her concerns. Plaintiff continued to voice concerns about her supervisors' competency through the end of 2006. On January 14, 2007, Plaintiff and Defendant again met. Defendant urged Plaintiff to contact Human Resources about her concerns. Plaintiff met with Human Resources to discuss Leppelman's alleged harassment. Plaintiff agreed to mediation, but a scheduled meeting never occurred and the school district failed to reschedule the mediation. On March 14, Plaintiff told Defendant she intended to inform the School Board of her concerns.

On April 9, Leppelman informed Plaintiff that he would not recommend her employment contract be reinstated for the following year. On April 17, Plaintiff provided a letter to her superiors, attempting to clarify and dismiss false allegations

3

Leppelman made against her to Defendant. On May 18, Defendant notified Plaintiff she would not renew Plaintiff's employment contract because Defendant feared Puesta Del Sol would not achieve the school district's Adequate Yearly Progress (AYP) goals.[2] At the same time, however, numerous other schools in the district likely would not achieve the AYP goals. These schools' principals, all of whom were retained, were not African-American females. Plaintiff requested a hearing with the school board regarding the non-renewal of her contract and the alleged discriminatory treatment. The school board did not grant Plaintiff a hearing.

Plaintiff subsequently filed her civil rights complaint which Defendant moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the basis of qualified immunity. The district court denied Defendant's motion. The district court reasoned the facts alleged in the complaint, taken as true, raise an inference that Defendant treated Plaintiff differently than employees outside her protected class. The district court further concluded the right to be free from race-based discrimination was clearly established law at the time of the alleged violations.

---

[2] Although both parties and the district court represented "AYP" stood for "Annual Yearly Progress," AYP actually stands for "Adequate Yearly Progress." "AYP represents the annual academic targets in reading and math and other indicators that the state, school district and schools must reach to be considered on track with the federally mandated goal of 100% proficiency by school year 2013–2014." New Mexico Public Education Department, Frequently Asked Questions about AYP, http://ped.state.nm.us/ayp2011/AYP FAQ 2011.pdf.

## II.

On appeal, Defendant challenges the district court's qualified immunity decision with regard to both the § 1981 and § 1983 claims. Defendant, however, does not differentiate between the two claims in her brief. Rather, in support of her argument, she relies almost exclusively upon our equal protection "class of one" jurisprudence. Moreover, Defendant does not challenge whether the law was clearly established, but instead argues the district court erred in denying qualified immunity because Plaintiff's complaint fails to allege facts sufficient to show Defendant plausibly violated her constitutional rights. In particular, Defendant asserts Plaintiff's complaint must contain an express allegation specifically naming a "similarly situated" principal in the school district who was treated more favorably than Plaintiff.

At this stage of the litigation, we examine whether Plaintiff's complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in Plaintiff's complaint, accepted as true, must "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

5

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

A.

We will first address why Plaintiff did not allege a class of one equal protection claim against Defendant before turning to whether Plaintiff alleged sufficient facts to nudge her "claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "[T]he Equal Protection Clause protects persons, not groups." Engquist v. Or. Dep't of Agric., 553 U.S. 591, 597 (2008) (internal quotation marks omitted). The Supreme Court's "equal protection jurisprudence has typically been concerned with governmental classifications that affect some groups of citizens differently than others." Id. at 601 (internal quotation marks omitted). In such a case, a plaintiff alleges she has been "arbitrarily classified as [a member] of an identifiable group." Id. (internal quotation marks omitted). But the Supreme Court has recognized that "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" Id. We subsequently based our decision in Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210 (10th Cir. 2011), on a class of one theory.

Here, Plaintiff's complaint does not allege a class of one equal protection violation. Plaintiff did not once allege Defendant irrationally singled her out for adverse treatment. Rather, Plaintiff's equal protection count states Defendant's

6

actions "were taken against Plaintiff because of her race." Thus, Plaintiff alleges class-based discrimination. Moreover, even if Plaintiff had alleged a class of one claim, the Supreme Court has held "the class-of-one theory of equal protection does not apply in the public employment context."[3] Engquist, 553 U.S. at 598.

B.

Having determined Plaintiff alleged a race-based equal protection claim rather than a class of one claim, we now must decide whether Plaintiff has alleged sufficient facts to support her claims of race discrimination under § 1981 and violation of equal protection under § 1983. Although "the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012). "In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII." Carney v. City & Cnty. of Denver, 534 F.3d 1269, 1273 (10th Cir. 2008) (quoting Baca v. Sklar, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005)). "To make out a prima facie case of discrimination,

---

[3] Defendant also posits that we will become a "general purpose second guesser" if we allow claims such as Plaintiff's to proceed beyond the motion to dismiss stage. In holding public employees cannot make class of one claims, the Supreme Court reaffirmed the "Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently." Engquist, 553 U.S. at 605. Because Plaintiff makes such a claim in this case, Defendant is incorrect in her assertion.

[Plaintiff] must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees." Id. (quoting Orr v. City of Albuquerque, 417 F.3d 1144, 1149 (10th Cir. 2005)).

In Khalik, an Arab-American alleged race discrimination. Although we knew the plaintiff was Arab-American, we had no context for when the plaintiff complained of race discrimination or to whom. 671 F.3d at 1194. The plaintiff did not allege whether other Arab-Americans were treated differently and we had no allegation about how the defendant treated the plaintiff compared to other non-Arabic or non-Muslim employees. Id. Put simply, the complaint contained no facts relating to the alleged discrimination. Accordingly, we concluded the plaintiff's allegations were "conclusory" and "formulaic recitations" because the plaintiff in that case only made "general assertions of discrimination and retaliation, without any details whatsoever of events leading up to her termination." Id. at 1193.

Unlike in Khalik, Plaintiff in this case has alleged plausible claims for relief. Plaintiff alleged she is an African-American and that Defendant terminated her employment. She provided facts alleging she complained about race discrimination throughout the school year. These specific acts included Leppelman's comments regarding Plaintiff's attire. The complaint alleges Plaintiff complained to Defendant as well as to the Human Resources Division. Importantly, Plaintiff alleges *all* non-female-African-American principals whose schools did not meet AYP goals had their contracts renewed for the next school year. This allegation is more than a mere legal

8

conclusion. Plaintiff does not simply allege she was an African-American and fired. Rather, she alleges the non-female-African-American principals in the school district who failed to meet their AYP goals were not terminated. Thus, Plaintiff identified, in her complaint, a group of non-female-African-American employees who Defendant allegedly treated differently. Plaintiff has sufficiently plead her claims for race discrimination and violation of equal protection.

Defendant, however, argues Plaintiff cannot merely say she is in a protected class. Instead, Defendant asserts Plaintiff must identify specific individuals so she can understand the nature of the complaint and be put on notice. Defendant is correct merely stating one's race is insufficient under our pleading standard. Khalik, 671 F.3d at 1194. But Defendant is incorrect to state that Plaintiff failed to place her on notice. Defendant is the superintendent of a school district. We can reasonably infer she is aware of whom *she* employs as principals in her schools. Likewise, as the head of the school district, she is aware of which schools in her district meet AYP goals. Accordingly, Plaintiff put Defendant on notice by identifying a *specific* group of individuals—non-female-African-American principals in the Rio Rancho school district whose schools did not meet AYP goals.[4]

---

[4] Defendant, at oral argument, posited that by affirming the district court, we would impose the burden of proceeding with discovery "upon these Defendants who are supposed to have qualified immunity." As mentioned above, the only defendants who are *supposed* to have qualified immunity are those that have not violated a clearly established constitutional right. Taking the facts of Plaintiff's complaint as
(continued...)

9

For these reasons, the district court's determination to deny qualified immunity to Defendant Cleveland on Plaintiff's race discrimination and equal protection claims is AFFIRMED.

Entered for the Court,

Bobby R. Baldock
United States Circuit Judge

---

[4](...continued)
true, Defendant failed to renew Plaintiff's contract because she is an African-American, which is a violation of a clearly established constitutional right.